GUILFOYLE *v.* HANSON.

ALTERATION OF INSTRUMENTS —DEEDS —EVIDENCE —SUFFICIENCY.
   On a bill to protect complainant's homestead rights in certain
   land against a certain deed executed by complainant and her
   husband and delivered to defendant for a third person, evi-
   dence examined, and *held*, that the finding of the circuit
   judge that the name of the original grantee had been erased
   and another name substituted after the delivery of the deed
   would not be disturbed.

Appeal from Oceana; Sessions, J.   Submitted Janu-
ary 20, 1908.   (Docket No. 98.)   Decided January 31,
1908.

Bill by Laura Guilfoyle against John D. S. Hanson
and others to protect a homestead interest in certain land.
From a decree for complainant, defendants appeal.
Affirmed.

*Fred J. Russell*, for complainant.

*F. E. Wetmore* and *Chamberlain & Walker*, for de-
fendants.

MOORE, J.   This is a bill filed by the complainant, the
wife of William Guilfoyle, to protect her homestead in-
terests in 40 acres of land to which the defendants claim
title through a deed purporting to be executed by the
complainant's husband and herself, and bearing date the
28th day of August, 1905; and acknowledged before the
defendant, J. D. S. Hanson, as notary public.

The testimony shows that prior to the date of this deed,
J. D. S. Hanson had represented the complainant and
her husband as agent, the 40 acres being placed with him
for sale on commission.   The complainant and her hus-
band testified that the sale price was to be $1,200, and the
defendant Hanson was to receive $50 for commission.

The defendant Hanson, on the other hand, claims that the price was to be net $1,150 to Guilfoyle, and that he was to receive as his commissions all that might be obtained over and above that sum.

On the 25th day of August, 1905, Hanson contracted to sell the land in question to one Joseph P. Philburn for the sum of $1,400. Mr. Philburn paid $100 down. On the 28th of August, complainant and her husband went to Hanson's office, and there executed the deed in question.

Some time later, and about the 17th of October, 1905, Philburn wrote Mr. Hanson that he would forfeit the $100 and not take the land. In the meantime, the complainant and her husband had been informed that Mr. Hanson had sold the property for the price $1,400 to Philburn, and were dissatisfied with the deal on that account. After receiving the letter from Philburn, Hanson attempted to make sale to others, but not succeeding, decided to buy it for himself. He made an arrangement to borrow of the defendant Covell sufficient money to cover the purchase price and take a deed in Covell's name, Covell to give a contract back to Hanson. Thereupon the deed in question was filled out in the name of Mark B. Covell and delivered to him, the question of fact being whether at the time it was executed by the Guilfoyles the space for the name was left blank.

The case was tried upon the theory that if in fact the name of the grantee was left blank, and the deed delivered to Hanson, it conferred authority upon him to fill in the name of a grantee and deliver the deed. But the circuit judge, while neither affirming nor denying the correctness of this rule of law, determined the case, *first*, upon the facts, and *second*, upon the ground that even if the deed was delivered in blank, and if in such case a filling in of the name of the grantee by the agent of the grantor is authorized, yet that the rule did not go so far as to justify the agent himself becoming the purchaser, and inserting his own name, or the name of one who acts for him, in the deed.

It was conceded by the testimony on both sides that at the time the name of Mark B. Covell was written in this deed there were at the place where his name was made to appear traces of a name which had once been written there, which name was that of Joseph P. Philburn. The defendants' testimony tended to show that this name was crossed out before the deed was signed by William Guilfoyle and complainant. The complainant's testimony, on the other hand, is to the effect that when this deed was executed, the name of Joseph B. Philburn was inserted as the grantee in the deed, and that it was executed in that form and left with the defendant Hanson for delivery upon payment of the balance of the purchase price.

This testimony is corroborated very strongly by the receipt given by Hanson at the time, which read as follows:

"HART, MICH., Aug. 26, 1905.
"Received of Wm. Guilfoyle warranty deed covering S. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, Sec. 15 N., R. 16 W., to be delivered to Joseph P. Philburn on receipt of $1,050.00 for said Guilfoyle, on or before March 1st, 1906. It is hereby understood and acknowledged that Mr. Guilfoyle has received $100.00 on said premises this day.
"J. D. S. HANSON."

The defendant's clerk testifies that after receiving the letter from Philburn stating that he would not take the land, she removed the marks on the deed which occupied the space now occupied by the name of Mark B. Covell by the use of acid, after first using an eraser or knife. Her statement as to the condition of the deed at that time was that the name previously appearing there had been obliterated by heavy marks. If this were true, it would not necessarily follow that they were made prior to the execution of the deed. But examination of the deed under a strong glass fails to disclose the horizontal marks which would appear if an attempt had previously been made to mark off the name of Philburn, while the upright letters which were used in writing his name do appear clearly,

even after the deed had been subjected to the use of acids.

In view of these circumstances, and of this sharp conflict in testimony, we are not disposed to disturb the findings of fact of the circuit judge. He had the better opportunity to judge of the credibility of witnesses derived from noting their appearance on the stand. We see no reason to disturb his findings.

The decree of the court below will be affirmed.

GRANT, C. J., and OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.